COX v CITY OF DEARBORN HEIGHTS

Docket No. 146132. Submitted April 11, 1995, at Detroit. Decided April 28, 1995, at 9:55 A.M.

Sarah E. Cox, by her next friend Daniel Cox, brought an action in the Wayne Circuit Court against the City of Dearborn Heights and others, alleging liability by the city under the highway exception to governmental immunity for injuries she allegedly sustained as the result of the city's failure to make an intersection a four-way stop instead of only having stop signs for traffic on one of the streets. The court, James J. Rashid, J., granted summary disposition for the city, ruling that the plaintiff failed to offer evidence that was sufficient to make safety at the intersection a genuine issue of material fact. The plaintiff appealed.

The Court of Appeals *held:*

1. Unlike those of the state or the boards of county road commissioners, the duty of a municipality to maintain a highway in reasonable repair and in a condition reasonably safe and fit for travel is not limited to the improved portion of the highway designed for vehicular travel.

2. A municipality's duty to maintain a highway in reasonable repair and in a condition reasonably safe and fit for travel encompasses the duty to install adequate traffic control devices.

3. In this case, the trial court did not err in summarily dismissing the action on the basis of a lack of a genuine issue of fact regarding safety at the intersection. The plaintiff's expert witness declined to offer an opinion regarding safety at the intersection because of inadequate traffic studies, a petition signed by area residents indicating that the intersection was unsafe is not determinative in view of the expert's refusal to offer an opinion, the subsequent installation of additional stop signs at the intersection is inadmissible under MRE 407 because it is evidence of a subsequent remedial measure, and the

REFERENCES

Am Jur 2d, Highways, Streets, and Bridges § 400.

Liability for automobile accident at intersection as affected by reliance upon or disregard of unchanging stop signal or sign. 3 ALR3d 180.

plaintiff failed to submit evidence that the city failed to comply with the Michigan Manual of Uniform Traffic Control Devices.
    Affirmed.

GOVERNMENTAL IMMUNITY — HIGHWAY EXCEPTION — MUNICIPALITIES.
    The duty of a municipality to maintain a highway in reasonable repair and in a condition reasonably safe and fit for travel, a breach of which renders the municipality liable in tort pursuant to the highway exception to governmental immunity, is not restricted to the improved portion of the highway designed for vehicular travel; such duty encompasses, among other things, the duty to install adequate traffic control devices (MCL 691.1402[1]; MSA 3.996[102][1]).

*Fitzgerald, Cox & Hodgman* (by *Jamil Akhtar*), for the plaintiff.

*Cummings, McClorey, Davis & Acho, P.C.* (by *Marcia L. Howe*), for the defendant.

Before: O'CONNELL, P.J., and WAHLS and N. O. HOLOWKA,* JJ.

O'CONNELL, P.J. Plaintiff Sarah Elizabeth Cox, through her next friend Daniel Cox, appeals as of right the circuit court's order granting summary disposition in favor of defendant City of Dearborn Heights pursuant to MCR 2.116(C)(10). We affirm.

On April 24, 1989, plaintiff was standing on a sidewalk at the intersection of two streets in the City of Dearborn Heights. One of the streets had stop signs for traffic traveling in both directions on that street. On the other street, no stop signs were installed. Plaintiff was injured when an automobile driven by Sonia Lynn White apparently stopped at the appropriate stop sign, failed to observe an automobile approaching on the cross street, proceeded into the intersection, struck the automobile that was traveling in a perpendicular

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

path, and propelled that automobile from the roadway and into plaintiff.

Plaintiff brought suit against the drivers of both cars, the owners of both cars, and Dearborn Heights. Settlement agreements were reached with all defendants except Dearborn Heights. Dearborn Heights (hereinafter defendant) then moved for summary disposition pursuant to MCR 2.116(C)(7), (8), and (10). The circuit court granted defendant's motion pursuant to MCR 2.116(C)(10) after it was learned that plaintiff's proffered expert witness would be unwilling to testify that the intersection in question was unsafe. The lower court implicitly held nonexpert testimony regarding the issue of safety to be inadequate for creating a material factual issue concerning the safety of the intersection.[1]

The gist of plaintiff's complaint, as relevant to the present defendant, is that defendant's failure to install two more stop signs at the intersection constituted a breach of its duty to maintain the highway in a state of reasonable and safe repair, allegations designed to fall within the highway exception, MCL 691.1402(1); MSA 3.996(102)(1), to the broad immunity generally afforded governmental agencies. MCL 691.1407; MSA 3.996(107).

On appeal, defendant argues that the trial court's rationale for granting summary disposition is correct. Also, defendant, cognizant of this Court's practice of affirming where the right result was reached by the trial court but for the wrong reason, *Gray v Pann,* 203 Mich App 461, 463; 513 NW2d 154 (1994), raises two additional arguments apparently not raised below. First, defendant contends that, as a municipality, any duty it may have extends only to the "improved portion of the

---

[1] The trial court would require an expert witness to testify that the intersection was unsafe.

highway designed for vehicular travel," MCL 691.1402(1); MSA 3.996(102)(1) (which allegedly does not include traffic signs). In the alternative, defendant argues that even if its duty is not limited to the improved portion of the highway designed for vehicular travel, the broader duty of maintaining highways "in reasonable repair . . . reasonably safe and convenient for public travel," MCL 691.1402(1); MSA 3.996(102)(1), does not include a duty to install adequate traffic control devices.

I

We first address defendant's contention that it may be held liable only for injuries ultimately stemming from improved portions of highways designed for vehicular travel. Generally, all governmental agencies are immune from tort liability for actions taken in furtherance of a governmental function. MCL 691.1407; MSA 3.996(107). The term "governmental agency" is defined to include municipal corporations such as defendant city. MCL 691.1401(a) and (d); MSA 3.996(101)(a) and (d). However, several "narrowly drawn" exceptions to this immunity exist. *Mason v Wayne Co Bd of Comm'rs,* 447 Mich 130, 134; 523 NW2d 791 (1994). Among these is the highway exception.

The highway exception is set forth in MCL 691.1402(1); MSA 3.996(102)(1), which, in relevant part, states that

> [e]ach governmental agency having jurisdiction over any highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel. Any person sustaining bodily injury or damage to his or her property by reason of failure of any governmental agency to keep any highway under its jurisdiction in reason-

able repair, and in condition reasonably safe and fit for travel, may recover the damages suffered by him or her from the governmental agency. . . . The duty of the state and the county road commissions to repair and maintain highways, and the liability therefor, shall extend only to the improved portion of the highway designed for vehicular travel and shall not include sidewalks, crosswalks, or any other installation outside of the improved portion of the highway designed for vehicular travel.

Additionally, "highway" is defined broadly to include "every public highway, road, and street which is open for public travel and shall include bridges, sidewalks, crosswalks and culverts on any highway." MCL 691.1401(e); MSA 3.996(101)(e).

Defendant argues that, as a municipality, it is subject to liability only for injuries resulting from inadequacies of the improved portion of the highway designed for vehicular travel. Although the relevant statute provides such a limitation of liability, this limitation expressly applies only to the state and to county road commissions. MCL 691.1402(1); MSA 3.996(102)(1). Defendant argues that the relevant case law reflects an extension of this limitation to municipalities as well. While we concede that the case law, until recently, was somewhat ambiguous with regard to this issue, see, e.g., *Bunch v Monroe,* 186 Mich App 347, 349; 463 NW2d 275 (1990), the Supreme Court's recent statement concerning the matter in *Mason, supra,* p 136, n 6, defeats defendant's position. In *Mason,* the Supreme Court stated that the limiting sentence in issue "applies *only* to counties and the state," and went on to elucidate, to some extent, the rationale underlying the disparate treatment afforded municipalities. *Id.* (emphasis supplied). Therefore, we are constrained to reject defendant's

contention. The limitation of liability set forth in MCL 691.1402(1); MSA 3.996(102)(1) applies only to the state and to the county road commissions.

Therefore, defendant's duty in the present case is controlled by the first sentence of MCL 691.1402(1); MSA 3.996(102)(1), which, to reiterate, provides that "[e]ach governmental agency having jurisdiction over any highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel."

II

Defendant next argues that the duty to maintain its highways "in reasonable repair . . . reasonably safe and convenient for public travel," MCL 691.1402(1); MSA 3.996(102)(1), does not include a duty to install adequate traffic signs, such as the stop sign allegedly lacking in the present case. While this Court's decision in *Pick v Gratiot Co Rd Comm*, 203 Mich App 138, 141; 511 NW2d 694 (1993), appears to support such a contention, we note that the defendant in that case was a county road commission, an entity enjoying the limitation of liability that we, immediately above, have concluded does not encompass the present defendant.

Further, the question in *Pick* was whether the duty to maintain "improved portion[s] of . . . highway[s]" included a duty to install certain traffic signs, while in the present case we must consider whether the duty to maintain highways "in reasonable repair . . . reasonably safe and convenient for public travel," MCL 691.1402(1); MSA 3.996(102)(1), includes the duty to install adequate traffic control devices.

We hold that a municipality's duty to maintain its highways in reasonable repair so that they are

reasonably safe and convenient for public travel encompasses the duty to install adequate traffic signs. To quote at length from Justice BOYLE's concurrence in *Chaney v Dep't of Transportation,* 447 Mich 145, 175-176; 523 NW2d 762 (1994):

> By the early eighties, it was established that "the duty to maintain a highway in reasonable repair encompasses the maintenance of traffic signs." *Salvati v State Hwy Dep't,* 415 Mich 708, 715; 330 NW2d 64 (1982.)[7] In 1968, the Legislature narrowed liability under the highway exception by excluding trees and utility poles from the definition of "highway" as that term is used in the highway exception. MCL 691.1401(e); MSA 3.996(101)(e). Before the amendment, this section had stated merely that "[t]he term 'highway' shall not be deemed to include alleys."[8] Because, at that time, governmental units could be liable for failing to repair and maintain traffic lights and signs, and because the Legislature restricted liability without mentioning signs and traffic lights, it is reasonable to infer[9] that it intended that governmental units should be liable for failing to repair and maintain signs and signals.

---

[7] In *Salvati,* Justice COLEMAN, joined by Chief Justice FITZ-GERALD and Justice RYAN, summarized the duty as follows:

A governing unit may incur liability under the broad concept of "traffic sign maintenance" in the following ways: for failing to properly maintain a sign placed on the roadway, *O'Hare v Detroit,* 362 Mich 19; 106 NW2d 538 (1960); for failing to erect any sign or warning device at a point of hazard, *Bonneville v Alpena,* 158 Mich 279; 122 NW 618 (1909); *Mullins v Wayne County,* 16 Mich App 365; 168 NW2d 246 (1969); for positioning an improper system of signs on the roadway, *National Bank of Detroit v Dep't of State Highways,* 51 Mich App 415; 215 NW2d 599 (1974); or for placing a sign which inadequately informs approaching motorists of a hazard, *Lynes v St Joseph County Road Comm,* 29 Mich App 51; 185 NW2d 111 (1970). While the highway authority has discretion in the erection of traffic control signs, MCL 257.608; MSA 9.2308, this discretion may not be capitalized upon to shield the authority from liability for highway defects, see *Mullins, supra,* 381, nor should compliance with standard manual specifications similarly act wholly to absolve the highway authority from

liability. However, *National Bank of Detroit, supra,* suggests that compliance with traffic manual standards is a factor to consider in determining the reasonableness of the state's actions at the time of the accident. [415 Mich 715.]

[8] Cf. *Dettloff v Royal Oak,* 178 Mich App 319; 443 NW2d 410 (1989) (affirming dismissal of the case on the ground of governmental immunity where the plaintiff alleged that she had slipped and fallen in an alley).

[9] We conclude that the inference is, at best, approximate. The Legislature's failure to exclude signs or lights from the definition of a highway does not necessarily show that it intended to include them. The necessary votes may not have been available for either proposal. Cognizant of the difficulties presented by the limited information available to us, we remain convinced that this is the most reasonable interpretation of what occurred.

---

We are aware that neither Justice BOYLE's opinion in *Chaney* nor Justice COLEMAN's opinion in *Salvati,* upon which Justice BOYLE relied, garnered the signatures of four justices, and that, as a result, neither opinion constitutes binding precedent under the doctrine of stare decisis. *People v Jackson,* 390 Mich 621, 627; 212 NW2d 918 (1973); see also *Negri v Slotkin,* 397 Mich 105, 109; 244 NW2d 98 (1976). However, we find the reasoning set forth by Justice BOYLE in *Chaney* to be applicable to the present situation, and, in the absence of any controlling authority on the matter, we adopt it as our own.

However, we are not entirely comfortable with the result. In *Mason, supra,* a driver failed to stop at a red stop light, leading to the injury of the plaintiff, who was running across the street on a crosswalk. The Supreme Court held that the Wayne County Board of Commissioners could not be held liable for the failure to install a flashing red stop light and various signs warning drivers that a school was nearby.

In the present case, Sonia White failed to remain at the stop sign until the intersection was clear of traffic, and struck a lawfully traveling

automobile, leading to the injury of plaintiff, who was standing on a sidewalk. The factual situations are similar. Yet, because of the two standards set forth in the highway exception, MCL 691.1402(1); MSA 3.996(102)(1), a municipality could be held responsible, where the state or a county road commission would not be held liable under the same circumstances.

In accordance with the reasoning set forth in *Mason* and *Chaney,* we today make explicit that municipalities may face liability where a pedestrian is injured as a result of allegedly inadequate traffic control devices. While we are puzzled with regard to the Legislature's disparate treatment of municipalities vis-a-vis the state and county road commissions, our role is to enforce the law as written. Furthermore, our duty is to interpret the law, not make new laws. Any purported ambiguity in the relevant statute was laid to rest by Justice Boyle's concurring opinion in *Chaney.* Therefore, we reject defendant's argument that it had no duty to install adequate traffic signs.

III

Defendant's final contention is that the trial court correctly ruled that expert testimony was required to put the safety of the intersection in issue. Defendant's position may or may not be correct. However, we need not reach that precise issue where plaintiff failed to submit any admissible evidence to put in issue a material fact, rendering summary disposition appropriate pursuant to MCR 2.116(C)(10).

Plaintiff, in response to defendant's motion for summary disposition, had the burden of presenting sufficient evidence from which the trial court could conclude that a factual record might be developed

that would leave open a material issue upon which reasonable jurors could differ. *Coleman-Nichols v Tixon Corp,* 203 Mich App 645, 650; 513 NW2d 441 (1994). Furthermore, this evidence must be evidence that would be admissible at trial. *SSC Associates Limited Partnership v General Retirement System of the City of Detroit,* 192 Mich App 360, 364; 480 NW2d 275 (1991). Specifically, plaintiff had to present admissible evidence that the intersection was not reasonably safe as required by MCL 691.1402(1); MSA 3.996(102)(1). As mentioned above, plaintiff was unable to procure expert testimony to this effect, which testimony likely would have satisfied this requirement.

Plaintiff submits that the evidence she offered was sufficient to withstand defendant's motion for summary disposition. First, she presents a petition signed by area residents stating that the intersection in question was unsafe. While we would not be inclined to find such a political document probative with regard to the issue of safety, we are not, in any event, persuaded that the common person could offer competent testimony regarding the issue where plaintiff's own expert witness declined to offer his opinion because of allegedly inadequate traffic studies. If it can be said that plaintiff's own expert was incompetent to testify with regard to the issue, it stands to reason that common citizens likewise are not competent to testify.

Second, plaintiff claims that testimony establishing that defendant subsequently installed stop signs at the intersection in question would be admissible. Obviously, this evidence would be inadmissible as a subsequent remedial measure pursuant to MRE 407. See also *Jernigan v General Motors Corp,* 180 Mich App 575, 583-584; 447 NW2d 822 (1989). While plaintiff argues that our decision in *Ellis v Grand Trunk W R Co,* 109 Mich

App 394; 311 NW2d 364 (1981), controls the present matter, *Ellis* involved a study of subsequently generated reports of subsequently existing conditions, rather than subsequent remedial measures, as in the present case. However, to the extent that our present statement regarding the matter is inconsistent with our prior holding in *Ellis,* we decline to follow *Ellis.* See Supreme Court Administrative Order No. 1994-4.[2]

Finally, plaintiff contends that defendant did not comply with the Michigan Manual of Uniform Traffic Control Devices, which, apparently, defendant has adopted. While a failure to comply with the manual's directives likely would be admissible evidence, see *Salvati, supra,* plaintiff has failed to submit evidence of such a lack of compliance. Our review of the record, including plaintiff's specific citations to the lower court file, fails to reflect any evidence suggesting that defendant failed to comply with the manual.

Therefore, plaintiff failed to submit admissible evidence putting in dispute the safety of the intersection. Accordingly, the trial court acted properly in granting defendant's motion for summary disposition.

Affirmed.

---

[2] We note, however, that our present statement is wholly consistent with the rule of law established in *Denolf v Frank L Jursik Co,* 395 Mich 661, 669-670; 238 NW2d 1 (1976), upon which *Ellis* relies.